STATE of Missouri, Respondent,

v.

Marvel JONES, Appellant.

Marvel JONES, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 64112, 68161.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 13, 1996.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 25, 1996.

Application to Transfer Denied
April 23, 1996.

Gary E. Brotherton, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Cheryl A. Caponegro, Assistant Attorney General, Jefferson City, for respondent.

CRANDALL, Judge.

Defendant, Marvel Jones, appeals from his judgments of conviction, following a jury trial, of first degree murder and armed criminal action. Defendant was sentenced to a term of life imprisonment without possibility of probation or parole for the murder and to a consecutive term of thirty years for armed criminal action. Defendant also appeals the denial of his Rule 29.15 motion without an evidentiary hearing. We affirm.

Defendant does not dispute the sufficiency of the evidence. Viewed in the light most favorable to the verdict, the evidence reveals that defendant was selling drugs on a St. Louis city street in the early morning hours of June 7, 1991. Another drug dealer, "Stretch" Granger, who lived on the street, confronted defendant for "disrespecting" one of his drug customers. Granger pistol-whipped defendant and fired two shots after defendant as he ran away. Defendant went to his aunt's house, where he proceeded to sleep for several hours.

Later that evening, defendant and Kirby McClendon visited the home of an acquaintance to purchase some bullets. Defendant was carrying a .22 caliber pistol. Defendant and McClendon informed another acquaintance, Jeffrey Jefferson, that they were going to "pop," (kill) Granger. When defendant and McClendon were unsuccessful in procuring the bullets at the acquaintance's home, they approached another individual and tried unsuccessfully to purchase bullets from him. The evidence is unclear, but at some point in time, defendant proceeded with a loaded pistol.

Defendant and McClendon walked to the street where the earlier pistol-whipping incident occurred. Several children were in the area shooting off fireworks. Defendant stopped by a bush located in a vacant lot next to Granger's house. Granger was sitting on his front porch. Nine year-old Christopher Harris was on Granger's porch steps. De-

fendant pulled out his weapon and fired two shots at Granger. Granger stood and grabbed Christopher, pulling the child toward him. One of the bullets fired by defendant struck the child. Christopher died as the result of the gunshot wound.

■ At trial, defendant admitted firing the shots at Granger. However, defendant insisted he panicked when he saw Granger stand because Granger patted his pocket. Defendant stated he only fired because he thought Granger was going to shoot him.

In his first point, defendant claims the trial court erred in overruling his motion for a mistrial with prejudice as a sanction for the state's failure to disclose an audiotaped statement in which Jefferson stated that the state had coerced his grand jury testimony.[1]

This was defendant's second trial. Defendant's first trial was held in November of 1992. While the jury was deliberating, defendant moved for a mistrial because the state failed to disclose Jefferson's taped statement which could have been used for impeachment purposes. The trial court granted the defendant's request for a mistrial, but ruled it to be without prejudice.

■ If a defendant requests a mistrial, double jeopardy will bar retrial only if the request is motivated by governmental conduct which is intended to provoke the defendant into moving for a mistrial. *Oregon v. Kennedy*, 456 U.S 667, 676, 102 S.Ct. 2083, 2089, 72 L.Ed.2d 416 (1982). To determine the intent of the state, the trial court must objectively make a finding of fact. *Oregon v. Kennedy*, 456 U.S. at 675, 102 S.Ct. at 2089. In the first trial, the judge found as a fact that the state did not intend to cause a mistrial in the first trial and there is evidence in the record to support that conclusion. The tapes at issue here were generated by the office of the public defender in a companion case. The prosecutor in this case had reasonable grounds to assume that the defendant's attorneys were aware of the tapes'

existence and that they had access to them. While this does not excuse the prosecutor's failure to disclose the tapes, here the defendant failed to prove that the prosecutor's conduct was intended to provoke the mistrial. Defendant's first point is denied.

In his second point on appeal, defendant contends the trial court erred in sustaining the state's motion in limine which precluded defendant from presenting his expert's testimony that defendant suffered from impairment with psychological stressors which would have prevented him from coolly reflecting.

■ To preserve error when testimony is ruled inadmissible, a defendant must make an offer of proof. *State v. Belcher*, 856 S.W.2d 113, 116 (Mo.App.E.D.1993). This offer of proof must demonstrate the testimony's relevance, must be specific and must be definite. *Id.* The preferred procedure is to put the witness on the stand and elicit the testimony out of the jury's hearing by asking questions of the witness. *Id.* This enables the trial court to intelligently rule on the testimony's admissibility and preserves a proper record for our review. *Id.* A narrative by counsel may be considered sufficient when it is clear that both the trial court and counsel knew exactly what the proposed testimony would be. *Id.*

■ Here, defendant did not put his expert on the stand. The so-called offer of proof consisted of the following:

The Court: We'll indicate the Court's prior ruling was not to allow [defendant's expert] to testify.

[Defense counsel]: Judge, at this time I would like the record to reflect I previously filed with the court and handed the court a copy of [defendant's expert], a doctor, and her 10–page report regarding the evaluation of the defendant, Marvel Jones. And at this time during the proceedings it would be my intention to call [defendant's expert] and offer her testimony which would be consistent with what is

---

1. Although defendant alternatively asserts in his Point Relied On that the trial court erred in failing to exclude Jeffrey Jefferson's testimony as a sanction for the state's failure to disclose the audiotaped statement, he failed to brief this allegation of error in the argument portion of his brief. Allegations of error not briefed or not

properly briefed shall not be considered on appeal except errors respecting the sufficiency of the information or indictment, verdict, judgment, or sentence. Rule 30.20. However, even if we were to review for plain error, we find no manifest injustice or miscarriage of justice.

represented in this 10–page report. And based on the Court's prior ruling with respect to the State's Motion in Limine it's my understanding that the State's motion is sustained and I would I will (sic) be precluded from calling her at this time.
The Court: [Prosecutor]?
[Prosecutor]: I would object to the offer of proof on the same basis that I did in my Motion in Limine; namely that twofold, the psychologist does not state a mental disease or defect contemplated by 552.010 or .030, and that therefore her testimony would be—or a mental disorder contemplated by those statutes that would amount to a mental disease or defect which would impair this person from forming the intent or deliberating concerning the murder here. The reports do not reflect that and if called she could not or would not be able to say that and that there is no causal connection between the claimed matters in the report that would affect the particular elements of Murder First or Murder Second.
[Defense counsel]: Judge, I would just make this record at this time. It's my understanding motion in limines (sic) are preliminary rulings and that as the case goes on the Court is free to change those rulings. But it's my understanding the Court is going to remain with its original ruling in granting and sustaining the State's Motion in Limine and therefore I would be precluded from offering her as a witness at this time.
The Court: At this stage of the proceeding the Court is not likely to change its position concerning allowing [defendant' expert] to testify as to the content of this report. So the ruling remains the same and the Court notes the offer of proof and its ruling remains. Record will reflect the report is—has been filed with the Court.
[Defense counsel]: And the Court has read that report.
The Court: That is correct.

Defendant's offer of proof failed to demonstrate the relevance of the expert's proposed testimony and is insufficient to preserve the point for our review. However, even if we were to review the issue, we find no error, plain or otherwise. Review of the offered report shows that the expert's testimony was properly excluded. Defendant wanted to introduce the expert's testimony to negate the mental element of first degree murder.

■ Evidence that a defendant suffered from a mental defect is admissible in a criminal proceeding to determine that the defendant did or did not have a state of mind which is an element of the offense. § 552.015(8), RSMo 1986. Section 552.010, RSMo 1986, defines mental disease or defect to include congenital and traumatic mental conditions as well as disease. The report of the expert stated that defendant suffered from attentional deficit disorder with a developmental expressive language disorder, and that, in the expert's opinion, the defendant's disability made it almost impossible for him to coolly reflect in periods of high stress and anxiety. This diagnosis does not rise to the level of mental disease or defect. Even if we were to assume, *arguendo*, that the expert's diagnosis would qualify as a mental disease or defect under the statute and that exclusion of her testimony was error, we find no prejudice to the defendant. Between the time of the pistol-whipping and his later attempts to purchase bullets, defendant slept several hours. He was not in a stressful situation when he and McClendon were attempting to procure bullets or when he informed Jefferson that he was going to shoot Granger. During this time, defendant had ample time to coolly reflect on his actions, and yet proceeded to Granger's house with a loaded pistol. Defendant's second point is denied.

In his third point, defendant contends the trial court erred in not instructing on the lesser offense of voluntary manslaughter. Defendant argues there was a basis for an acquittal of the higher offense and a conviction only of the lesser offense because the evidence demonstrated that Granger reached for his pocket causing defendant to panic and fire two shots in Granger's direction.

■ Voluntary manslaughter is the intentional killing of another person under circumstances that would constitute murder in the second degree except that it occurs under the influence of sudden passion arising from adequate cause. § 565.023, RSMo 1986. Even if we were to assume, *arguendo*, that sufficient evidence was adduced to justify the

submission of defendant's requested manslaughter instruction, any error in failing to instruct on manslaughter was harmless because the jury was instructed on both first-degree murder and second-degree murder and convicted defendant of first-degree murder. *Id.* Defendant's third point is denied.

We have reviewed defendant's remaining points on his direct appeal. No jurisprudential purpose would be served by a written opinion on these points. Defendant's remaining points concerning his direct appeal are denied. Rule 30.25(b).

We have reviewed defendant's point concerning the denial of his Rule 29.15 motion without an evidentiary hearing. The judgment of the trial court is based on findings of fact that are not clearly erroneous; no error of law appears. An opinion on this point would have no precedential value. Point denied. Rule 84.16(b).

The judgments of conviction are affirmed. The denial of defendant's Rule 29.15 motion is affirmed.

CRAHAN, P.J., and DOWD, J., concur.