STATE of Missouri, Respondent,

v.

**Lewis E. GILBERT, Appellant.**

**No. SC 84214.**

Supreme Court of Missouri,
En Banc.

April 22, 2003.

Rehearing Denied May 27, 2003.

Deborah B. Wafer, Office of Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Asst. Atty. Gen., Jefferson City, for Respondent.

DUANE BENTON, Judge.

In August 1994, Lewis E. Gilbert and an accomplice, Eric Elliott, stole a car in Ohio. They began driving southwest across the country. A few days later, after parking in a field in Callaway County, the car became stuck in the mud. Planning to steal money and another car, Gilbert and Elliot walked to the nearby home of William F. Brewer, age 86, and Flossie Mae Brewer, age 75. After talking with the couple for a half-hour, they shot both of them three times in the head, and stole their car, cash, and rifles. Gilbert and Elliot were arrested a week later in New Mexico.

A jury convicted Gilbert of two counts of first-degree murder, and one count each of first-degree burglary, first-degree tampering, stealing, and armed criminal action. He received two death sentences, life imprisonment, and 29 years of imprisonment. This Court has exclusive jurisdiction of the

appeal. *Mo. Const. art. V, sec. 3.* Affirmed.

## I.

■ Gilbert claims the court should have allowed defense counsel to ask the venire panel whether they ever made an oral or written statement about the death penalty. Defense counsel asked:

Q: Can you recall—and I agree that this is not a thing that people talk about every day. I'm asking if you recall personally ever having made a statement from words from your own mouth or maybe written a letter to the editor or anything about the death penalty? I'm talking about do you recall ever making a statement about the death penalty from your own mouth?

The judge sustained the State's objection to relevancy and materiality, and limited the defense to asking only about formal statements and writings. Gilbert claims this violated his rights to a fair trial, due process, freedom from cruel and unusual punishment, and reliable sentencing, in violation of the United States Constitution, Amendments V, VI, VIII, and XIV; the Missouri Constitution, Article I, sections 10, 18(a), and 21; and section 494.470 RSMo 1994[1].

■ An adequate *voir dire* that identifies unqualified jurors is necessary to a fair trial. *Morgan v. Illinois,* 504 U.S. 719, 729–30, 112 S.Ct. 2222, 2230, 119 L.Ed.2d 492, 503 (1992). The purpose of *voir dire* is to discover bias or prejudice in order to select a fair and impartial jury. *Knese v. State,* 85 S.W.3d 628, 632 (Mo. banc 2002). The trial judge has discretion to determine the appropriateness of specific questions. *State v. Oates,* 12 S.W.3d 307, 310 (Mo. banc 2000).

■ This Court reviews *voir dire* rulings for an abuse of discretion. *State v. Kreutzer,* 928 S.W.2d 854, 861 (Mo. banc 1996), *cert. denied,* 519 U.S. 1083, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997); *State v. Clark,* 981 S.W.2d 143, 146 (Mo. banc 1998). In addition, the defendant has the burden to show a "real probability" of prejudice from the abuse of discretion. *Oates,* 12 S.W.3d at 311.

The trial judge limited defense counsel to asking whether panel members had ever made any **formal** speeches or writings on the death penalty. This was not an abuse of discretion. In the *Kreutzer* case, the questions were:

Q: We're not in the courtroom, I walk up to you in a coffee shop, maybe I know you, and we sit down and we start talking, and we see in the paper that a death penalty has been carried out. And I say to you, what do you think of the death penalty, what are you going to tell me?

[Objection sustained]

. . . .

Q: Have you ever expressed an opinion about the death penalty before?

A: Probably.

Q: Do you remember what you said, or can you recall or reconstruct what you said?

[Objection sustained]

This Court affirmed because counsel asked open-ended questions about how prospective jurors felt or thought about certain issues. *Kreutzer,* 928 S.W.2d at 864. In the present case, defense asked whether the panel members had "ever" made a statement about the death penalty—in language almost identical to that in *Kreutzer.*

---

**1.** All statutory references are to RSMo 1994 unless otherwise indicated.

The trial judge did not abuse discretion by following the precedent of this Court.

Moreover, this ruling did not prejudice the defense. Counsel asked many questions of the potential jurors, exploring their beliefs about the death penalty. These questions included whether they understood the law of aggravating and mitigating circumstances; whether they could follow the court's instructions on sentencing; whether they could consider evidence in mitigation; and whether they could vote for either the death penalty or life without parole. The primary purpose of death qualification is to determine whether prospective jurors have such strong views about the death penalty that they cannot be impartial in sentencing. *Morgan,* 504 U.S. at 728–29, 112 S.Ct. at 2229, 119 L.Ed.2d at 502. In this case, there was not a real probability of prejudice from the trial judge limiting voir dire to formal statements and writings about the death penalty.

## II.

Gilbert claims the trial court should have quashed the information because it did not plead the statutory aggravating circumstances later submitted in the penalty phase. This, he contends, is required by *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

This Court rejected this argument in *State v. Tisius,* 92 S.W.3d 751, 766–67 (Mo. banc 2002). See also *United States v. Sanchez,* 269 F.3d 1250, 1261 n.16 (11th Cir.2001), *cert. denied,* 535 U.S. 942, 122 S.Ct. 1327, 152 L.Ed.2d 234 (2002); *State v. Nichols,* 201 Ariz. 234, 33 P.3d 1172, 1174–75 (App.2001); *People v. Ford,* 198 Ill.2d 68, 260 Ill.Dec. 552, 761 N.E.2d 735, 738 n.1 (2001), *cert. denied,* 536 U.S. 963, 122 S.Ct. 2672, 153 L.Ed.2d 845 (2002);

*State v. Mitchell,* 353 N.C. 309, 543 S.E.2d 830, 842, *cert. denied,* 534 U.S. 1000, 122 S.Ct. 475, 151 L.Ed.2d 389 (2001).

Gilbert further argues that article I, section 17 of the Missouri Constitution, requires that the indictment or information list the aggravating circumstances. This is also required, he asserts, by the Sixth Amendment guarantee that he be "informed of the nature and cause of the accusation." The *Tisius* case, in effect, rejected these contentions by holding that a charge of first-degree murder notifies the defendant that the maximum penalty is death. *Tisius,* 92 S.W.3d at 767, quoting *State v. Cole,* 71 S.W.3d 163, 171 (Mo. banc 2002). In this case, pursuant to section 565.005, the state gave defendant notice, before trial, of the aggravating circumstances it intended to prove at the second stage of trial. Section 565.005 meets the standard of both the federal and state constitutions.

## III.

■ According to Gilbert, the trial court erred in submitting Instructions 6 and 10, the verdict directors for murder in the first degree, because they attribute the conduct elements to either him or Elliott. He alleges there was no evidence he committed any conduct elements of the offense.

Instruction 6, the verdict director for first-degree murder of Flossie Brewer, read as follows (emphasis added):

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 30, 1994, in the County of Callaway, State of Missouri, *the defendant or* Eric Elliott caused the death of Flossie Brewer by shooting her, and

Second, that *the defendant or* Eric Elliott knew or was aware that his conduct was practically certain to cause the death of Flossie Brewer, and .

Third, that *the defendant or* Eric Elliott did so after deliberation, which means cool reflection on the matter for any length of time no matter how brief

then you are instructed that the offense of murder in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the death of Flossie Brewer, the defendant aided or encouraged Eric Elliott in causing the death of Flossie Brewer and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief

then you will find the defendant guilty under Count I of murder in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

(Instruction 10, the verdict director as to William Brewer, was identical, except for the victim's name.)

■ On review, this Court accepts as true all evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989). If the evidence is unclear as to which person committed the conduct constituting the offense, the jury instruction should be written in the disjunctive. *Id.;* MAI–CR3d–304.04, Note on Use 5(c).

In the *Dulany* case, the defendant was convicted of capital murder. Dulany and an accomplice were the last people in the victims' house while they were alive. Dulany admitted holding a gun on the victims, getting rope to bind them, and taking out the empty cans of roofing cement poured over the helpless couple. She also admitted fleeing the state after the crimes. In conflicting confessions, she named different men as responsible for the victims' deaths.

In *Dulany,* the verdict directors were disjunctive, as in this case. This Court found that disjunctive instructions give the jury the opportunity to consider evidence that is unclear. *Id.* at 54–55. When the defendant has purposely aided in capital murder and has the same intent as the principal, they are liable to the same degree. *Id.* at 56. There can be no prejudice because the jury can find defendant guilty only if it finds she committed the crime or acted together with, or aided, the other person to commit the elements of the crime. *Id.* at 56.

Gilbert testified he tied Flossie Brewer's hands behind her back, helped her down the stairs to the basement, but was upstairs petting the dog when the murders occurred. To the contrary, when arrested, Gilbert stated that he was in the Brewers' basement with Elliott when the shots were fired. These facts distinguish this case from *State v. O'Brien,* 857 S.W.2d 212 (Mo. banc 1993).

The court properly followed MAI–CR3d–304.04, Note on Use 5(c). When it is unclear whether the conduct elements were committed by the defendant or another person, the court must insert a version of "acted together with or aided" in a fourth paragraph. *MAI–CR3d–304.04, Note on Use 5(c).* The fourth paragraph requires that the defendant aid or encourage after "deliberation" on the death of the

victims. See *State v. Skillicorn*, 944 S.W.2d 877, 894–895 (Mo. banc), *cert. denied*, 522 U.S. 999, 118 S.Ct. 568, 139 L.Ed.2d 407 (1997) (quoting *State v. O'Brien*, 857 S.W.2d 212, 217–218 (Mo. banc 1993)). If a MAI–CR instruction applies, the court must submit it. *Rule* 28.02(c); *State v. Roberts*, 948 S.W.2d 577, 603 (Mo. banc 1997), *cert. denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998). The court here gave proper verdict directors.

### IV.

■ In a related point, Gilbert alleges the evidence does not support a conviction for first-degree murder, but only second-degree murder. In reviewing the sufficiency of evidence to support a conviction, this Court views the evidence, together with all reasonable inferences, in the light most favorable to the State, disregarding all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). "[R]eview is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *Dulany*, 781 S.W.2d at 55.

The State has the burden to prove that Gilbert deliberated on murdering the Brewers. *Section 565.020.* In order to be responsible for Elliott's acts, he had to aid or encourage Elliott, either before or during the crime, after deliberation. *Section 562.041.1(2); State v. Ferguson*, 20 S.W.3d 485, 497 (Mo. banc), *cert. denied*, 531 U.S. 1019, 121 S.Ct. 582, 148 L.Ed.2d 499 (2000); *O'Brien*, 857 S.W.2d at 217–218 (Mo. banc 1993); *State v. Isa*, 850 S.W.2d 876, 898–99 (Mo. banc 1993). Factors considered include: associating with those that committed the crime before, during, or after its occurrence; acting as a show of force in the commission of the crime; fleeing the crime scene; or failing to assist the victim or seek medical help. *State v. Barnum*, 14 S.W.3d 587, 591 (Mo. banc 2000).

Gilbert claims the evidence did not show he deliberated on murdering the Brewers. Instead, he asserts, he participated in a felony—robbery—that resulted in the death of the victims.

■ Deliberation is cool reflection upon the matter for any length of time, no matter how brief. *Section 565.002(3).* State of mind may be proved by the circumstances surrounding the crime. *State v. Johnston*, 957 S.W.2d 734, 747 (Mo. banc 1997), *cert. denied*, 522 U.S. 1150, 118 S.Ct. 1171, 140 L.Ed.2d 181 (1998); *State v. Ervin*, 979 S.W.2d 149, 159 (Mo. banc 1998), *cert. denied*, 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999).

Confessing after his arrest, Gilbert said that he and Elliott were invited inside the house by Mrs. Brewer, after they said they needed to use the phone to call a wrecker. Once inside, they realized there was no phone book. At that time, Gilbert confessed, they decided they were going to kill the Brewers. Gilbert used a telephone cord to bind Flossie Brewer's hands, then he and Elliott led the elderly couple down to the basement. According to Gilbert's confession, Elliott shot both of them three times in the head. Asked if he was "solely responsible for the murders in Missouri," Gilbert answered that "it was a 50/50 deal."

At no time after the murders did Gilbert seek medical assistance for the victims, or notify the authorities. See *State v. Feltrop*, 803 S.W.2d 1, 12 (Mo. banc), *cert. denied*, 501 U.S. 1262, 111 S.Ct. 2918, 115 L.Ed.2d 1081 (1991). Instead, he fled the scene, and continued travelling with Elliott for a week, in spite of several opportunities to distance himself. See *Skillicorn*, 944

S.W.2d at 887; *State v. Clay*, 975 S.W.2d 121, 139–40 (Mo. banc 1998), *cert. denied*, 525 U.S. 1085, 119 S.Ct. 834, 142 L.Ed.2d 690 (1999) (presence at the crime scene and flight therefrom show consciousness of guilt); *State v. Rodden*, 728 S.W.2d 212, 219 (Mo. banc 1987) (flight shows consciousness of guilt contradicting innocence). The State's evidence was sufficient to support first-degree murder.

## V.

■ Gilbert contends that the State should be precluded from seeking death due to the unavailability of some mitigating evidence. He asserts that certain clinic, hospital, police, pre-investigation, school, birth, and penitentiary records were simply not available. Allegedly, this hampered his ability to present an individualized mitigation case.

Gilbert does not say that any of the unavailable records were destroyed in a "calculated effort to circumvent" disclosure. *California v. Trombetta*, 467 U.S. 479, 488, 104 S.Ct. 2528, 2533, 81 L.Ed.2d 413 (1984); *State v. Chambers*, 891 S.W.2d 93, 113 (Mo. banc 1994). Some medical records were unavailable because the defense could not locate the doctor, others because the hospital destroyed them. Some mental health records could not be found because the treatment center no longer exists.

Through the testimony of his mother and three experts, Gilbert presented mitigating evidence of childhood abuse, low I.Q., acquired brain injury, mental defect, anxiety disorder, attention deficit disorder, hyperactivity, and learning disabilities.

He was not prejudiced by the absence of further documentation.

## VI.

■ Gilbert asserts that the court should have suppressed his statements to Officer Becker. He argues that his confession was not knowing, intelligent, and voluntary. On September 6, 1994, Gilbert was arrested in Santa Fe, New Mexico, and immediately advised of his *Miranda* rights. Taken to the police station, he was interviewed by Officer Becker. A tape recorder—in full view—recorded Gilbert's statements. Officer Becker again administered *Miranda* rights, using a standard form. After reading each right, Officer Becker placed a check mark beside it. When finished, he asked Gilbert if he understood his rights. Gilbert stated he understood. Officer Becker did not read the waiver-of-rights section at the bottom of the form, but did ask Gilbert if he was willing to speak to him. Gilbert did not sign the waiver form because his hands were handcuffed, as they were during most of the interview. However, he did orally agree to speak with Officer Becker, and did so for about 3½ to 4 hours.[2]

■ A trial court's ruling on a motion to suppress will not be reversed if supported by substantial evidence. *Feltrop*, 803 S.W.2d at 12. "If one is informed of his right to remain silent under Miranda, and understands his right to remain silent under Miranda, and thereafter makes voluntary statements, it is absurd to say that such person has not made a knowing and intelligent waiver of his right to remain silent." *Skillicorn*, 944 S.W.2d at 890; *State v. Schnick*, 819 S.W.2d 330, 336 (Mo.

---

**2.** Gilbert asserts in his point-relied-on that the trial court erred in allowing the prosecutor's closing arguments about his silence. In his brief, Gilbert also objects to testimony about the end of the interview. Neither the closing arguments nor the testimony was objected to. To the extent Gilbert asserts plain error, the arguments are denied because Gilbert was not silent, but spoke at length with Officer Becker.

banc 1991) (citing *Sims v. Georgia*, 385 U.S. 538, 541–43, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967)). A knowing and intelligent waiver of the right to silence is normally shown by testimony that the officer read the accused his rights, asked whether they were understood, and received an affirmative response. *State v. Schnick*, 819 S.W.2d at 335–36.

There is no evidence of coercion. Officer Becker did not strike or threaten Gilbert. He also did not make any promises or say anything intended to coerce him to talk. Gilbert was allowed a few breaks to smoke, and eat a sandwich. Officer Becker did say: "the truth will set you free." However, an objectively noncommittal statement by the police does not rise to the level of an implied promise. *State v. Schnick*, 819 S.W.2d at 336. The trial court properly admitted Gilbert's statements to Officer Becker.

## VII.

According to Gilbert, the trial court should have granted a mistrial during the penalty-phase opening statements. In the State's opening, the assistant attorney general said: "So, ladies and gentlemen, I think it will be very clear, when you hear all of this evidence, that what we're dealing with here is a serial killer." Defense objected, and the judge sustained, ordering the jury to disregard the statement. Defense then moved for a mistrial, which the judge denied.

The scope of opening statements is within the discretion of the trial court. Review is for abuse of discretion. *State v. Thompson*, 68 S.W.3d 393, 395 (Mo. banc 2002). Error alone does not warrant reversal. *State v. Hall*, 982 S.W.2d 675, 680 (Mo. banc 1998), *cert. denied* 526 U.S. 1151, 119 S.Ct. 2034, 143 L.Ed.2d 1043 (1999). Reversal requires prejudicial error. *Id.*

This case is similar to *State v. Clemons*, 946 S.W.2d 206 (Mo. banc), *cert. denied*, 522 U.S. 968, 118 S.Ct. 416, 139 L.Ed.2d 318 (1997). There, defying a court ruling, the prosecutor compared the defendant to John Wayne Gacy and Charles Manson in his closing argument. The trial judge sustained the objection, admonished the prosecutor, ordered the comments stricken, and instructed the jury to disregard them. On appeal, Clemons attacked the corrective measures as inadequate. This Court held that the trial court did not abuse its discretion in refusing to declare a mistrial. Striking the statement from the record and ordering the jury not to consider it were sufficient. *Clemons*, 946 S.W.2d at 217; see also *State v. Whitfield*, 837 S.W.2d 503 (Mo. banc 1992).

The trial court here correctly denied a mistrial. Mistrial is drastic, reserved for the most extraordinary circumstances. *State v. Johnson*, 901 S.W.2d 60, 62 (Mo. banc 1995). Reversal is necessary only where denying a mistrial prevents a fair trial. *Clemons*, 946 S.W.2d at 217. Gilbert has not shown prejudice from the assistant attorney general's comment. Jurors are presumed to follow the court's instructions. *State v. Lyons*, 951 S.W.2d 584, 598 (Mo. banc 1997), *cert. denied* 522 U.S. 1130, 118 S.Ct. 1082, 140 L.Ed.2d 140 (1998). The court's corrective measures sufficiently healed any injury from the prosecutor's comments.

## VIII.

Gilbert claims he was unlawfully extradited from Oklahoma to Missouri, although he acknowledges the existence of an "Executive Agreement" between the governors of the two states. This claim has no merit. Once the accused is in the custody of the demanding state, extradition is no longer

subject to legal attack. *State v. Willis*, 654 S.W.2d 78, 80 (Mo. banc 1983); *State v. Williams*, 652 S.W.2d 102, 109 (Mo. banc 1983); *State v. Johnson*, 457 S.W.2d 762, 764 (Mo.1970). "Due process of law is satisfied when one present in court is convicted of crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 512, 96 L.Ed. 541, 545–46 (1952).

## IX.

This Court must determine whether:

(1) the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor;

(2) the evidence supports the jury's findings of a statutory aggravating circumstance;

(3) the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering the crime, the strength of the evidence, and the defendant. *Section 565.035.*

Having reviewed the record, this Court concludes that the punishment imposed was not the product of passion, prejudice, or any other arbitrary factor.

The evidence supports the two statutory aggravating circumstances found for each murder: (1) the murder of each victim was committed while Gilbert was engaged in the commission of an unlawful homicide of the other victim; (2) Gilbert murdered each victim for the purpose of receiving money or any other thing of monetary value.

■ Finally, this Court concludes that the death sentences in this case are neither excessive nor disproportionate to the penalty imposed in similar cases. See *State v. Clayton*, 995 S.W.2d 468, 484 (Mo. banc), *cert. denied*, 528 U.S. 1027, 120 S.Ct. 543, 145 L.Ed.2d 421 (1999). The death penalty has been imposed on defendants who committed first-degree murder while perpetrating a burglary in the victim's home. *Kreutzer*, 928 S.W.2d 854 (Mo. banc 1996), *State v. Ramsey*, 864 S.W.2d 320 (Mo. banc 1993), *cert. denied*, 511 U.S. 1078, 114 S.Ct. 1664, 128 L.Ed.2d 380 (1994); *State v. Griffin*, 756 S.W.2d 475 (Mo. banc 1988), *cert. denied*, 490 U.S. 1113, 109 S.Ct. 3175, 104 L.Ed.2d 1036 (1989). It has been upheld when the victim was helpless or rendered helpless by the murderer—*State v. Goodwin*, 43 S.W.3d 805 (Mo. banc), *cert. denied*, 534 U.S. 903, 122 S.Ct. 234, 151 L.Ed.2d 168 (2001); *State v. Tokar*, 918 S.W.2d 753 (Mo. banc), *cert. denied*, 519 U.S. 933, 117 S.Ct. 307, 136 L.Ed.2d 224 (1996)—and where there were multiple victims. *Ramsey*, 864 S.W.2d 320 (Mo. banc 1993); *State v. Mease*, 842 S.W.2d 98 (Mo. banc 1992), *cert. denied*, 508 U.S. 918, 113 S.Ct. 2363, 124 L.Ed.2d 269 (1993); *State v. Hunter*, 840 S.W.2d 850 (Mo. banc 1992), *cert. denied* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 732 (1993); *Ervin*, 835 S.W.2d 905 (Mo. banc 1992); *State v. Powell*, 798 S.W.2d 709 (Mo. banc 1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1077 (1991); *State v. Reese*, 795 S.W.2d 69 (Mo. banc 1990), *cert. denied*, 498 U.S. 1110, 111 S.Ct. 1025, 112 L.Ed.2d 1106 (1991). The death penalty has also been upheld where the defendant murdered the victims as part of a crime spree, *State v. Johns*, 34 S.W.3d 93 (Mo. banc 2000), *cert. denied*, 532 U.S. 1012, 121 S.Ct. 1745, 149 L.Ed.2d 668 (2001); *State v. Morrow*, 968 S.W.2d 100 (Mo. banc), *cert. denied*, 525

U.S. 896, 119 S.Ct. 222, 142 L.Ed.2d 182 (1998), and where the defendant murdered the victims to avoid inconvenience for himself. *Skillicorn,* 944 S.W.2d 877 (Mo. banc 1997); *State v. Gray,* 887 S.W.2d 369 (Mo. banc 1994), *cert. denied,* 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995). The death sentences here are not disproportionate.

The judgment is affirmed.

All concur.