**STATE of Missouri, Plaintiff–Respondent,**

v.

**Amanda BUSSE, Defendant–Appellant.**

**No. 26399.**

Missouri Court of Appeals,
Southern District,
Division One.

Sept. 2, 2005.

---

Susan L. Hogan, Kansas City, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. General, Daniel N. McPherson, Asst. Atty. General, Jefferson City, MO, for Respondent.

NANCY STEFFEN RAHMEYER, Judge.

Amanda Busse ("Appellant") was charged by information with murder in the first degree in violation of section 565.020,[1] but was convicted after a jury trial of one count of murder in the second degree in violation of section 565.021. Appellant was sentenced to twenty-five years imprisonment. In her sole point on appeal, Appellant asserts the trial court erred in sustaining the prosecutor's objection to Defense Counsel's *voir dire* question on the issue of the range of punishment for second degree murder. We affirm.

Appellant does not challenge the sufficiency of the evidence, therefore, we will view the evidence in a light most favorable to the verdict. *State v. Johnson,* 95 S.W.3d 221, 222 (Mo.App. S.D.2003). The evidence adduced at trial reveals that Diane Coleman ("Diane"),[2] thirty-two, did not return to Westwood's Care Center ("Westwood") on the night of November 11, 1997. Diane had schizophrenia and was being monitored at Westwood. Her body was discovered a few days later, on November 15, 1997, in Crawford County, floating in the Meramec River. An autopsy revealed that her injuries were consistent with a beating, which resulted in her death. She had numerous cuts and lacerations on her arms and hands from trying to defend

---

1. All references to statutes are to RSMo 2000 unless otherwise specified.

2. Since several individuals share the same surname, we will use their given names for purposes of clarity. No disrespect is intended.

herself. The autopsy further suggested that the beating occurred with different blunt objects. The cause of death was blunt impacts to the head with injury to the brain.

On the evening of November 11, 1997, eleven-year-old Kenneth Paul Busse ("Kenneth") was living with his grandmother when his sister, Appellant, stopped by between 11:30 p.m. and 12:30 a.m., and told Kenneth she wanted to take him to a party to celebrate his birthday. Kenneth reluctantly left his grandmother's house and climbed into a van driven by Larry DeClue ("Larry"), Appellant's boyfriend. Also in the van were a few of Appellant's friends: Jeremy Payne ("Jeremy"), Angela Cody, and Melissa O'Brien. Appellant offered a piece of paper with LSD on it to Kenneth and instructed him to place it underneath his tongue. He followed her instructions, but removed the piece of paper after five to ten seconds.

Kenneth fell asleep in the backseat of the van before they all arrived at the party. When he awoke, however, he was not at a party. Instead the van was stopped and completely empty. He climbed out of the van and saw that all of the van's occupants were in the road. Kenneth asked Appellant what was going on and when Appellant stepped aside Kenneth could see a woman lying face up between all of them. Larry then left the circle around the woman and went to the van. He returned carrying three items: a pipe cutter, a crowbar, and a little souvenir baseball bat. He instructed those standing in the circle to hit the woman lying on the ground so that "nobody could snitch on anybody." Larry was the first to hit the woman. A bat was eventually passed to Kenneth who raised it up and then dropped it and ran crying back to the van. Everyone took turns hitting the woman and Kenneth saw Appellant hit the woman

three or four times. The woman tried to speak and defend herself, but only a gurgling sound came out. Larry and Jeremy carried the body to the edge of the bridge to toss her over the side but the woman's foot became lodged in some foliage along the bank. Larry eventually dislodged her foot. When Larry returned to the van, he threatened that if anyone ever said anything about what happened he would take care of it.

The next day Larry and Jeremy picked Kenneth up from his grandmother's house in a pickup truck and drove him to the bridge where they had dumped the body the night before. Larry and Jeremy went down into the ravine and came back up with the body wrapped in a tarp; they placed the body in the bed of the pickup truck and drove to a piece of property in the woods. They instructed Kenneth to get out of the truck and wait for them there at an old cabin. The truck took off on a trail that led to the river and Larry and Jeremy did not return for over an hour. When the pickup finally returned, Jeremy was no longer a passenger with Larry. Instead, Kenneth's uncle was riding with Larry. The two exited the vehicle and ordered Kenneth to fetch rags and a bucket of water. Kenneth's uncle and Larry cleaned the bed of the truck with soap and bleach and then Kenneth was taken back to his grandmother's house. Diane's body was later discovered in Meramec River by hunters.

The jury found Appellant guilty of second degree murder and the trial court sentenced her to twenty-five years imprisonment. This appeal followed.

In Appellant's sole point on appeal, she contends the trial court erred in sustaining the prosecutor's objection to Defense Counsel's *voir dire* question on the issue of punishment for second degree murder, because it violated Appellant's right to due

process of law and to a fair trial with an impartial jury. Further, she asserts that the questions were legitimate questions which were necessary to determine whether members of the jury panel would be able to follow the court's instructions and consider the entire range of punishment if Appellant were found guilty of a lesser included offense.

■ A defendant is entitled to a fair and impartial jury under both the Missouri and United States Constitutions. U.S. CONST. amends. VI, XIV; MO. CONST. art. I, sec. 18(a) (1945, as amended 1976). In order to make sure that such a jury is fair and impartial there must be an adequate *voir dire* that identifies unqualified jurors. *State v. Oates,* 12 S.W.3d 307, 310 (Mo. banc 2000). "[T]he trial judge is vested with the discretion to judge the appropriateness of specific questions, and is generally vested with wide discretion in the conduct of *voir dire.*" *Id.; see also State v. Cummings,* 134 S.W.3d 94, 109 (Mo.App. S.D.2004) (holding that the control of *voir dire* is a matter within the sound discretion of the trial court). While it is the rule in this state that a liberal latitude is allowed in the examination of veniremembers, there is one legitimate limitation. *State v. Clement,* 2 S.W.3d 156, 159 (Mo.App. W.D.1999). This limitation occurs at the point where questioning tends to create prejudice. *Id.*

■ We will reverse only for an abuse of discretion and where Appellant can demonstrate prejudice. *State v. Gilbert,* 103 S.W.3d 743, 746 (Mo. banc 2003). The trial court abuses its discretion in control of *voir dire* only if the *voir dire* permitted does not allow for the discovery of bias, prejudice or impartiality. *State v. Barton,* 998 S.W.2d 19, 25 (Mo. banc 1999). "On appeal, discretionary rulings are presumed correct, and the appellant bears the burden of showing the abuse of discretion."

*Pollard v. Whitener,* 965 S.W.2d 281, 286 (Mo.App. W.D.1998) (quoting *Anglim v. Missouri Pac. R.R. Co.,* 832 S.W.2d 298, 303 (Mo. banc 1992)). "Where an appellant claims that a trial court abused its discretion in conducting the *voir dire,* he has the burden of showing a 'real probability' that he was prejudiced by the abuse." *Oates,* 12 S.W.3d at 311. We find no abuse of discretion here.

■ The trial court commenced the *voir dire* with questions about the panel members' relationship with the parties, the lawyers and their associates, their knowledge of the facts of the case, hardships created by jury services, and other questions of a general nature. After the prosecutor conducted his examination of the panel, Appellant's counsel ("Defense Counsel") began his *voir dire* examination. Following some very general questions, Defense Counsel asked the following question:

[DEFENSE COUNSEL]: I want everyone to understand, [Appellant] is charged with murder first degree. The punishment, if convicted of murder first degree—

[PROSECUTOR]: Objection, Your Honor. May counsel approach?

THE COURT: Did you want to approach?

(The following proceedings were held at the bench, out of the presence of the jury panel.)

[PROSECUTOR]: Punishment on murder first, if not submitted to a jury, should not be argued in *voir dire.* No reason to be mentioned in *voir dire.*

THE COURT: Are we going to talk about range of punishment or the fact that she's punished? You can talk about the fact that there's punishment, but the range thereof is not appropriate.

[DEFENSE COUNSEL]: They have a right to know because what happens is, if in fact they actually have a jury sentencing.

THE COURT: I'm well aware of that. We can talk about the fact of punishment and the penitentiary is one of those options, but as far as the range of punishment, that's not appropriate on *voir dire*. It's whether they can give punishment or not give punishment; it's not the range of years. That's prejudicial to go into the fact of the range of years.

[DEFENSE COUNSEL]: Can I talk about anything with the range of punishment in reference to years?

THE COURT: Sure. You can talk about it'll be a long time, but as far as the specific range of number of years, that's inappropriate.

[DEFENSE COUNSEL]: Okay. Well, I just want the record to reflect that I would ask this jury that if they could follow the instruction that says murder first is life without parole and if in fact that if, you know, if there is lesser included, that there may be a range of punishment on a murder second.

[PROSECUTOR]: There is no such instruction, Your Honor, under the new system of instruction.

THE COURT: Well, that question is inappropriate as being compound, for one thing. It's also inappropriate because you're here. You're inflaming the jury with regard to the number of years. You can go, in the sense of it can be an extreme number of years, lots of years, but you're not going to give details of life without parole or the range.

[DEFENSE COUNSEL]: Okay. Just so the record is clear, Judge, that it was two separate questions that I propose to ask.

THE COURT: Well, you gave me a compound. I'm talking about the range of years. That's where we're at.

[DEFENSE COUNSEL]: I understand, but I want your ruling based on

that those are two separate questions that I was going to ask.

THE COURT: What was your other one?

[DEFENSE COUNSEL]: The first one was for murder first, it is life without parole, and on murder second the range of punishment is from ten to thirty years or life.

THE COURT: Well, we're not going to talk about up and down the ranges on whether they don't find guilty on one. We're not going to talk about specific term of years.

[DEFENSE COUNSEL]: I just want the Court to make clear that those are the two questions I was going to ask and that I'm being disallowed from asking either question.

THE COURT: You're being disallowed from asking it and giving that range of years. I'm telling you, you can emphasize the fact we're talking about a lot of years.

[DEFENSE COUNSEL]: I'm going to do that, sir. I appreciate it. I understand the ruling, but I just want the record clear.

The proceedings returned to open court and Defense Counsel asked the following questions:

On murder first, if there is a conviction, there is a punishment that is a lot, a lot, a lot of years. Does everybody here understand we're talking about something that is very, very serious? Does everyone understand? I expect that the state will call witnesses that will include family members of [Appellant]. Can you consider the possibility that a family member may lie on another family member?

While the record reveals that although the court sustained the prosecutor's objection to Defense Counsel's question regarding the specific range of punishment, De-

fense Counsel was allowed to explain and question the venire on the fact that punishment for murder first was serious and would be for a very long time. Defense Counsel did not make any further statements regarding murder in the second degree. Appellant argues that the jurors must be able to consider the full range of punishment, as in capital murder cases because, she asserts, to do otherwise is an abuse of discretion. Appellant cites to capital murder cases for the general proposition that veniremembers are picked according to their ability to consider the full range of punishment, including the death penalty. Appellant does not cite to any cases for the proposition that the court abuses its discretion in disallowing *voir dire* questions covering the specific range of punishment in lesser included offenses. We do not find any cases for that proposition either and further do not believe the cases involving the death penalty are apropos on this issue. It is the trial court's role to instruct the jury as to the range of punishment authorized by statute. Section 557.036.[3] We do not see how the trial court abused its broad discretion in refusing to allow Defense Counsel to discuss with veniremembers that the range of punishment for second degree murder was ten to thirty years or life. The jury recommended a sentence of twenty-five years, which was within those parameters. We find no abuse of discretion in the denial of further discussion of the range of punishment. The point is denied.

GARRISON, P.J., and PREWITT, J., concur.

---

3. Section 557.036 was changed effective June 27, 2003, to provide for the bifurcation of trials into first, a determination of guilt and second, a determination of punishment. The court does not instruct the jury on the range of punishment until the second phase.