

# In the Missouri Court of Appeals
# Eastern District
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED112798 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | 2322-CR01717 |
| | ) | |
| DEVIN GRIFFIN-CURRY, | ) | Honorable Timothy J. Boyer |
| | ) | |
| Appellant. | ) | Filed: July 22, 2025 |

Before James M. Dowd, P.J., Angela T. Quigless, J., and Thomas C. Albus, Sp. J.

## OPINION

This criminal case arose on July 12, 2022, in the City of St. Louis on Semple Avenue. Appellant Devin Griffin-Curry shot and killed his neighbor Rickey Lathan, Sr. (Victim) while Griffin-Curry's grandfather was complaining to Victim about the fireworks Victim and his ten-year-old son were shooting off at 11:00 p.m. that evening. The jury found Griffin-Curry guilty of second-degree murder and armed criminal action and the court sentenced him to consecutive prison terms of nineteen years for the murder and three years for the ACA.

Griffin-Curry now appeals asserting (1) the trial court violated his right to a speedy trial, (2) the trial court erred in excluding child psychologist Dr. Paula Fite's diminished capacity testimony that Griffin-Curry had Attention-Deficit/Hyperactivity Disorder (ADHD) which negated his culpable mental state, and (3) the trial court erred by overruling his objection to the State's acquittal-first closing argument and then erroneously failed to issue a curative instruction.

We affirm. First, we find the trial court did not err in denying Griffin-Curry's motion to dismiss for a speedy trial violation because he has failed to show that the length of the delay prejudiced him. Second, the trial court did not abuse its discretion in excluding Dr. Fite's diminished capacity testimony because the testimony was inadequate to negate the culpable mental state required for second-degree murder. Lastly, although the State's acquittal-first argument was indeed improper, we find the trial court did not abuse its discretion because Griffin-Curry did not show that he was prejudiced since juries are presumed to follow the court's jury instructions, not the prosecutor's closing argument, and the court's instructions were proper.

## Background

Viewed in the light most favorable to the verdict, the relevant evidence follows: On the night of July 12, 2022, officers received a ShotSpotter[1] notification of shots fired near Victim's and Griffin-Curry's residences. Upon responding to the area, they found Victim's lifeless body lying in his front yard bearing several bullet wounds. Victim's ten-year-old son told officers that he and Victim had been shooting off bottle rockets in their front yard when two men confronted them – one in a white t-shirt, and one in a dark-colored shirt. Son said the man in the white t-shirt pulled a gun from his pocket and shot his father multiple times and both suspects then fled toward the house across the street.

Officers noticed that the house across the street had a security camera so they knocked on the door seeking to obtain the footage. The house belongs to Griffin-Curry's grandparents. Grandmother let the officers in where they asked Grandfather if he heard or saw anything. Grandfather told police he was in his backyard when he heard gunshots. Grandfather allowed police to review the camera monitor which contradicted his initial statement. The camera

[1] According to the record, "ShotSpotter is a gunshot detection system that uses microphones and acoustic sensors to detect gunshots and alert law enforcement to the approximate location of the gunfire."

2

captured the moments before the shooting as Grandfather angrily shouted at Victim from his porch before heading down the steps of his porch in the direction of Victim's property.

Next, the camera captured Griffin-Curry in a white t-shirt running up the porch displaying a gun protruding from his pocket. Griffin-Curry shouted at Grandfather to quickly give him the security code to enter the house. Then, the video shows Grandfather and Griffin-Curry's brother, who also displayed a gun, slowly walking up the stairs as they smiled and laughed. As Grandfather approached the door, the camera caught him saying "He said he don't care about dying. Well, he dead now." Grandfather then typed the code which allowed Griffin-Curry and his brother to enter the house.

After searching the house, officers took Grandfather to police headquarters where Grandfather changed his story. This time he told officers that after he approached Victim about the fireworks, he heard gunshots coming from behind him and he froze and claimed he then closed his eyes. When the shots ceased, Grandfather claimed he opened his eyes and saw Victim downed in his front yard as his grandsons ran toward his home. After Grandfather let them in the house, they ran through and exited the back door. Griffin-Curry and his brother remained on the lam for months until police arrested them on December 8, 2022.

At trial, the State called several witnesses including police officers, Victim's son, Grandfather, and a medical examiner. Griffin-Curry presented one witness, a detective.

Pre-trial, the trial court thwarted Griffin-Curry's effort to have child psychologist Dr. Laura Fite testify that Griffin-Curry had diminished capacity due to ADHD. So, Griffin-Curry made an offer of proof at trial regarding Dr. Fite's testimony. Dr. Fite diagnosed Griffin-Curry with ADHD based on court, school, police, social service, and medical records. She testified that ADHD causes a person to have hasty reactions without taking in all the information, making an informed decision, or considering the consequences. Dr. Fite also stated that ADHD may affect

3

Griffin-Curry's ability to deliberate or plan his actions "in the moment" but she agreed that ADHD does not impair the ability to know that firing a gun can hurt someone.

As for the acquittal-first issue, during closing argument the State addressed the fact that the jury had been given three different verdict directors addressing the death of Victim – murder second, involuntary manslaughter first, and involuntary manslaughter second. The State argued that the set of instructions was not like a restaurant menu from which the jury could freely pick and choose. Rather, the State asserted the jury must first find the defendant *not guilty* of the second-degree murder charge *before* it moved on to consider the two involuntary manslaughter charges. Griffin-Curry's counsel objected that this was a misstatement of the law. The court overruled the objection finding the State's declaration to be mere argument and that the jury would be guided by the law per the instructions. In its rebuttal, the State repeated its claim, "You only move on to involuntary manslaughter one and two if for some reason you find that the defendant is *not guilty*. That's the instructions. That's the law." (Emphasis added). Defense counsel did not object this time.

As stated, the jury found Griffin-Curry guilty of second-degree murder and armed criminal action and this appeal follows.

**Discussion**

*Speedy Trial*

Griffin-Curry first claims the trial court erred in denying his motion to dismiss for violation of his right to a speedy trial. Although the length of the delay here is presumptively prejudicial, the other three factors from *Barker v. Wingo*, 407 U.S. 514, 520 (1972) do not support that a violation occurred, particularly since the causes of the delay were the normal functioning of the court and Griffin-Curry has not shown specific prejudice.

4

We review *de novo* claims of a violation of a defendant's Sixth Amendment speedy trial right though we defer to the trial court's factual findings. *State v. Sisco*, 458 S.W.3d 304, 313 (Mo. banc 2015). The right to a speedy trial appears in both the United States and Missouri constitutions. *Id.*, U.S. Const. Amend. VI; Mo. Const., art. I, § 18(a). We employ a four-factor analysis: (1) the length of the delay; (2) the cause of the delay; (3) whether and when the defendant asserted his right; and (4) the prejudice to the defendant from the delay. *Id.* (citing *Barker*, 407 U.S. at 520). The existence of any one of these factors is neither necessary nor sufficient to find a speedy trial deprivation. *Id.*

First, the length of the delay. Missouri courts find any delay longer than eight months to be presumptively prejudicial. *State ex rel. McKee v. Riley*, 240 S.W.3d 720, 731 (Mo. banc 2007). The delay is measured from the time of the formal indictment, or arrest, to the beginning of the trial. *State v. Ausler*, 697 S.W3d at 31 (Mo. App. E.D. 2024). Delays caused by the defendant are subtracted from the total delay when considering this factor. *Id*. Here, police arrested Griffin-Curry on December 8, 2022, and trial did not begin until 496 days later on April 17, 2024. Griffin-Curry caused approximately 60 days of those delays, so the delay was 436 days from arrest to trial. Thus, the delay exceeds the presumptive marker and triggers the remainder of the *Barker* analysis.

Second, the cause of the delay. "Pretrial delay is often inevitable and wholly justifiable." *State v. Davis*, 903 S.W.2d 930, 936 (Mo. App. W.D. 1995). Delays deliberately caused by the State to hamper the defense weigh heavily against the State. *Ausler*, 697 S.W.3d at 31. Delays caused by the regular functioning of the courts or the State's negligence, but which are not shown to be a deliberate attempt to delay trial, are considered neutral and weigh lightly against the State. *Id*. Delays caused by defense-requested continuances weigh heavily against the defendant. *Sisco*, 458 S.W.3d at 314.

5

Here, Griffin-Curry does not contend the State deliberately sought to hamper his defense or to delay the trial, nor is there any evidence the State did so. Griffin-Curry's continuances make up 60 days of the total delay which weigh heavily against him. Moreover, both parties consented to at least three continuances for depositions and other scheduling issues. Thus, overall, the cause of the delay is a neutral factor here because most of the delay seems to be due to the normal functioning of the court. *Ausler*, 697 S.W.3d at 31.

Third, the assertion of Griffin-Curry's right to a speedy trial. "There is no rigid requirement regarding when a defendant must assert his right …." *Sisco*, 458 S.W.3d at 316. "Instead, courts will weigh the timeliness of the assertion and the frequency and force of a defendant's objections." *Id.* Griffin-Curry asserted his right three times between October 2023 and April 2024. These multiple assertions weigh in favor of finding a speedy trial violation. *Id.* at 317.

Finally, the prejudice to the defendant. In assessing prejudice, we look to three primary considerations: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern on the part of the accused;[2] and (3) limiting impairment of the defense. *Id.* Any claimed prejudice resulting from delay must be actual and apparent on the record or by reasonable inference; speculative or just possible prejudice is not sufficient. *State v. Newman*, 256 S.W.3d 210, 217 (Mo. App. W.D. 2008). The prejudice must be more than the real prospect of prejudice that normally attends *any* criminal proceeding, i.e., that memories will dim, witnesses will become inaccessible, and evidence will be lost. *State v. Bell*, 66 S.W.3d 157, 162, 165 (Mo. App. S.D. 2001). The defendant bears the burden of proving prejudice. *State v. Howell*, 628 S.W.3d 750, 759 (Mo. App. E.D. 2021).

---

[2] Griffin-Curry does not make any argument regarding this consideration even though it is his burden to do so. Therefore, we need not address it.

6

As for oppressive pre-trial incarceration, Griffin-Curry does not provide any specific instances of oppression. In *State v. Wright*, 551 S.W.3d 608, 620 (Mo. App. E.D. 2018), Wright claimed his confinement was prejudicial because he had untreated medical conditions and he did not have access to his children. This Court found, however, that because "Wright does not detail, nor does the record reveal, any specific instances of the oppressive nature of his pretrial incarceration," he did not allege or prove facts establishing that his "confinement was overly excessive given the serious charges and evidence levied against him." *Id.* Here, Griffin-Curry gave even fewer details than Wright and instead relied generally on research and studies connecting lengthy pretrial detention with the increased likelihood of conviction. Thus, Griffin-Curry has shown only minimal prejudice for this factor. *See State v. Smith*, 491 S.W.3d 286, 308-09 (Mo. App. E.D. 2016).

Lastly, we consider the most important factor under the prejudice analysis – the impairment to Griffin-Curry's defense. Griffin-Curry again only refers to general research that an extended pretrial detention increases the likelihood of conviction and that people detained have less opportunity to meet with their attorneys and assist in their defense. This is not enough. *State v. Greenlee*, 327 S.W.3d 602, 612-13 (Mo. App. S.D. 2010) ("Claims of prejudice must be actual or apparent on the record, or by reasonable inference, while speculative or possible prejudice is not sufficient."). Thus, based on the foregoing, Griffin-Curry has failed to meet his burden that the trial court erred in denying his motion to dismiss due to a speedy trial violation.

*Dr. Fite's Testimony*

In his second point, Griffin-Curry claims that the trial court erred in excluding Dr. Fite's testimony that his ADHD rendered him a diminished capacity individual which Griffin-Curry argues negated the culpable mental state for second-degree murder. We again disagree.

We review a trial court's decision regarding the admission or exclusion of evidence for abuse of discretion. *State v. Wood*, 580 S.W.3d 566, 574 (Mo. banc 2019). An abuse of discretion occurs only if the trial court's ruling is so unreasonable and arbitrary that it shocks the senses and indicates a lack of careful, deliberate consideration. *State v. Loper*, 609 S.W.3d 725, 731 (Mo. banc 2020). "[I]f reasonable persons can differ about the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion." *State v. Brown*, 939 S.W.2d 882, 883 (Mo. banc 1997). "Even if the exclusion of testimony is erroneous, we will not reverse the judgment absent a finding that the error materially affected the merits of the action." *State v. Huckleberry*, 544 S.W.3d 259, 260 (Mo. App. S.D. 2017) (quoting *State v. Mort*, 321 S.W.3d 471, 483 (Mo. App. S.D. 2010)).

To be admissible, evidence must be both logically and legally relevant. *State v. Wilson*, 692 S.W.3d 54, 65 (Mo. App. E.D. 2024). "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (internal citation omitted). "Evidence is legally relevant if its probative value outweighs its costs, such as unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness." *Id.* (internal citations omitted).

As a threshold matter, we bear in mind that section 552.015.2(8)[3] allows evidence that the defendant did or did not suffer from a "mental disease or defect" for several reasons including "[t]o prove that the defendant did or did not have a state of mind which is an element of an offense." *See also State v. Jones*, 134 S.W.3d 706, 713 (Mo. App. S.D. 2004). Notably, in *State v. Jones*, 919 S.W.2d 12, 15 (Mo. App. E.D. 1996), this Court found that ADD[4] did not rise to the level of a mental disease or defect as defined in section 552.010.

---

[3] All statutory references are to the Revised Statutes of Missouri (2016) unless otherwise stated.
[4] In 1987, the Diagnostic and Statistical Manual of Mental Disorders (DSM) changed the definition of this hyperactivity disorder from Attention Deficit Disorder (ADD) to ADHD along

8

But even assuming ADHD is a mental disease or defect, the court here did not abuse its discretion in excluding the evidence because although Dr. Fite testified that Griffin-Curry's ADHD made him overly impulsive and reactive, she conceded that the ADHD did not impair his ability to *know* that firing a gun could injure or kill somebody. Dr. Fite's testimony, therefore, was not only irrelevant, but also directly contradicts Griffin-Curry's argument on appeal that her testimony negated the "knowing" *mens rea* required for a murder second conviction.

We deny Point II.

*Acquittal-First Argument*

Finally, Griffin-Curry claims the trial court erred in overruling his objection to the State's acquittal-first closing argument and in failing to issue a curative instruction. Although we agree the State's argument was improper, Griffin-Curry has failed to show prejudice.

We review alleged errors during closing argument for an abuse of discretion. *State v. Holmsley*, 554 S.W.3d 406, 410 (Mo. banc 2018). "When determining whether an improper closing argument constitutes an abuse of discretion requiring reversal, Missouri courts have considered 'whether the trial court gave a cautionary instruction, whether the court gave a curative type instruction to disregard the improper comment, and the strength of the state's case.'" *Id.* (quoting *State v. Ware*, 793 S.W.2d 412, 415 (Mo. App. E.D. 1990)). "An abuse of discretion occurs when a defendant is prejudiced such that there is a reasonable probability that the outcome at trial would have been different if the error had not been committed." *State v. Deck*, 303 S.W.3d 527, 540 (Mo. banc 2014).

"'The State has wide latitude in closing arguments, but closing arguments must not go beyond the evidence presented; courts should exclude statements that misrepresent the evidence

---

with changes in its diagnostic criteria. *ADHD: The Diagnostic Criteria*, PBS, (June 30, 2025, 1:24 PM), https://www.pbs.org/wgbh/pages/frontline/shows/medicating/adhd/diagnostic.html.

or the law, introduce irrelevant prejudicial matters, or otherwise tend to confuse the jury.'" *Holmsley*, 554 S.W.3d at 410 (quoting *Deck*, 303 S.W.3d at 540). An acquittal-first argument is a misstatement of the law and may constitute reversible error. *Tisius v. State*, 183 S.W.3d 207, 217 (Mo. banc 2006).

So, what is an acquittal-first argument? "Missouri's instructions on lesser-included offenses do not require that the defendant first be acquitted of the greater offense before the jury can consider the lesser offense." *State v. Johnson*, 599 S.W.3d 222, 228 (Mo. App. W.D. 2020) (internal quotations omitted). "Rather, the Missouri Approved Instructions – Criminal … provide that a jury *may* consider lesser-included offenses *if* it does not find the defendant guilty of the greater offense." *Id.* Where the jury is properly instructed on lesser-included offenses in accordance with the proper MAI, the jury is presumed to have followed the trial court's instructions. *Id.* (citing *State v. Gilbert*, 103 S.W.3d 743, 751 (Mo. banc 2003)).

Simply put, not finding the defendant guilty of the greater offense is a world apart from acquitting the defendant of the greater offense. In essence, by making its acquittal-first argument, the State told this jury that before it could consider the lesser-included offense verdict directors, it had to take a vote on the murder second charge and reach a 12-0 not guilty decision. That is incorrect and improper. And it would cause all sorts of problems within our trial courts especially given Missouri's strong preference to instruct down in criminal cases. *State v. Jackson*, 433 S.W.3d 390, 399-400 (Mo. banc 2014). If acquittal-first were the norm, juries unable to reach unanimity one way or the other on the most serious crime would be unable to move on to one of the lesser-included offenses about which they may have unanimity. This would be unworkable and, more importantly, it is not the law.

Yet despite the State's improper argument of this regard, we find that it did not prejudice Griffin-Curry. First, the court properly instructed the jury on the lesser-included offenses and the

10

instructions were consistent with the language required by MAI – CR4th 414.00. Additionally, the court instructed the jury that it must follow the instructions as given, that counsels' arguments were not evidence, and that it should consider lesser-included offenses if it did not find Griffin-Curry guilty of the higher offenses. Therefore, we presume that the jury followed the instructions. *Gilbert*, 103 S.W.3d at 751.

Finally, Griffin-Curry has not shown that there was a reasonable probability that the outcome at trial would have been different if the error had not been committed. Victim's son testified that he saw a man in a white t-shirt pull a gun from his pocket and shoot his father multiple times. Griffin-Curry's own grandfather testified that when he confronted Victim for shooting off fireworks that night, his grandsons followed him and suddenly, he heard gunshots coming where they were standing behind him. Security footage from Grandfather's front door shows Griffin-Curry, in a white t-shirt, run back to Grandfather's house with a gun in his pocket. Thus, based on the evidence, there was no prejudicial error.

**Conclusion**

For the foregoing reasons, we affirm.

_____
James M. Dowd, Presiding Judge

Angela T. Quigless, J., and
Thomas C. Albus, Sp. J., concur.